UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CINDA C. SEWARD-JONES,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>Defendant. | NO. C12-519-RSL-JPD<br><br><br>REPORT AND RECOMMENDATION |

Plaintiff Cinda C. Seward-Jones appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be reversed and remanded for further proceedings.

I.   FACTS AND PROCEDURAL HISTORY

At the time of her alleged onset date, plaintiff was a 50 year-old woman with a college education. Administrative Record ("AR") at 22, 35. Her past work experience includes employment as a recreation manager, teacher of disabled, optometric technician and a jewelry maker. AR at 22. Plaintiff was last gainfully employed in 2009. AR at 15.

REPORT AND RECOMMENDATION - 1

On January 6, 2010, plaintiff filed a claim for DIB payments and on January 13, she filed a claim for SSI payments. AR at 12. She alleges an onset date of July 14, 2009. *Id.* Plaintiff asserts that she is disabled due to degenerative disc disease of the cervical spine, a major depressive disorder, post traumatic stress disorder, mixed receptive-expressive language disorder and personality disorder. AR at 16.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 12. Plaintiff requested a hearing which took place on November 15, 2011. AR at 29-74. On December 7, 2011, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 12-24. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-5, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 3.

## II.     JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in

medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV. EVALUATING DISABILITY

As the claimant, Ms. Seward-Jones bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the

REPORT AND RECOMMENDATION - 3

national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On December 7, 2011, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since July 14, 2009, the alleged onset date.

3. The claimant has the following severe impairments: degenerative disc disease of the cervical spine, a major depressive disorder, post traumatic stress disorder, and mixed receptive-expressive language disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she should avoid concentrated exposure to vibration. The claimant could perform simple, repetitive tasks and follow short, simple instructions. She could do work that requires little or no judgment and could perform simple duties that can be learned on the job in a short period. The claimant has average ability to perform sustained work activities (i.e., can maintain attention and concentration, persistence, and pace) in an ordinary work setting on a regular and continuing basis (i.e., eight hours a day, for five days a week, or an equivalent work schedule) within customary tolerances of employers' rules regarding sick leave and absence. She could have occasional interactions with co-workers

     and supervisors and could work in proximity to co-workers but not in a cooperative or team effort. The claimant could tolerate occasional changes in the work setting. She could not interact with the public as in a sales position or a job requiring frequent interaction with the public as an essential element of the work process. However, the claimant could tolerate incidental contact of a superficial nature with the public.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on XXXXX, 1959, and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date.[2]

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 14, 2009, through the date of this decision.

AR at 15-24.

## VI.    ISSUES ON APPEAL

The principal issues on appeal are:

1. Whether the ALJ erred in finding that Plaintiff's severe depression and anxiety do not meet or equal a listing, a finding that could only be reached by rejecting all of the opinions of the treating and examining providers?

2. Whether the ALJ erred when he found Plaintiff's personality disorder is not a medically determinable impairment, based on a lack of evidence resulting from the ALJ's refusal to provide a consultative examination to document the impairment?

3. Whether the ALJ erred in the assessment of Plaintiff's RFC and credibility?

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

Dkt. No. 14 at 1.

## VII.    DISCUSSION

### A.    The ALJ Erred in Evaluating the Medical Evidence

The ALJ found that plaintiff had severe mental impairments consisting of major depressive disorder, post traumatic stress disorder ("PTSD"), and mixed receptive expressive language disorder.  The ALJ found that plaintiff did not have a severe personality disorder impairment.  As to the severe mental impairments found, plaintiff alleges that the ALJ erred by failing to find that plaintiff's mental impairments constituted or were equal to a Listing at Step 3, pursuant to 20 CFR 404, Subpart P, Appendix 1, listings 12.04 (affective disorder), 12.06 (anxiety-related disorder) and 12.08 (personality disorder).  She argues that this arose from a failure to properly weigh medical opinions.  Additionally, she argues that the ALJ erred when he did not find that plaintiff's alleged personality disorder was a severe impairment at Step 2.

#### *1.    Legal Standards for Listing*

It is a claimant's burden to demonstrate that her impairments meet, or are equivalent to a Listing.  *See Bowen v. Yuckert*, 482 U.S. 137, 141, 146 n.5 (1987).  If a claimant's "impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step."  *Id.* at 141; *see also Tackett v. Apfel,* 180 F.3d 1094, 1099 (9th Cir.1999); 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  "The listings define impairments that would prevent an adult, regardless of his [or her] age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'"  *Sullivan v. Zebley,* 493 U.S. 521, 532 (1990) (quoting 20 C.F.R. § 416.925(a)) (emphasis in original)).  "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.  An impairment that manifests only

REPORT AND RECOMMENDATION - 7

some of those criteria, no matter how severely, does not qualify." *Id.* at 530 (emphasis in original). "To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment 'most like' the claimant's impairment." *Tackett,* 180 F.3d at 1099 (quoting 20 C.F.R. § 404.1526) (emphases in original).

### 2. *12.04 and 12.06*

To meet or equal a Listing under 12.04, a claimant must demonstrate a set of medical findings set forth in Paragraphs A, and a set of impairment-related functional limitations set forth in Paragraphs B, or, if Paragraph B criteria are not present, then satisfy the Paragraph C criteria of Sections 12.04 and 12.06. Plaintiff claims that the ALJ erred in his treatment of the medical opinions of Drs. Bartlett and Parlatore, and Physician's Assistant Walters and Counselor Spreng.

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

REPORT AND RECOMMENDATION - 8

making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751).  The ALJ must do more than merely state his/her conclusions.  "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).  Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence.  *Id.*  An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors.  *Lester*, 81 F.3d at 831.  However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them.  In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it.  Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2.  Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record.  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

       a.  Kerry Bartlett, Ph.D.

Dr. Bartlett evaluated plaintiff on January 8, 2010, administering a series of psychological tests as part of the evaluation.  AR at 367-72.  In addition, almost two years later, on November 1, 2011, without having seen plaintiff in the interim, Dr. Bartlett filled out

REPORT AND RECOMMENDATION - 9

a check-the box interrogatory sent by plaintiff's counsel. AR at 402-06. In his January 2010 evaluation, Dr. Bartlett conducted a clinical interview, and administered a mental status evaluation, WMS-R Logical Memory and Visual Reproduction Sections, Selected Woodcock-Johnson Educational Subtests and a WAIS-III tests. AR at 368. Dr. Bartlett opined:

> Based upon the information available to me at this time, I suspect that Cinda is indeed too depressed to work. Admittedly, a successful return to work could have a therapeutic impact for her. However, without some improvement in her cognitive functioning and success finding a suitable work place I suspect that she is more likely to experience deterioration than improvement. . . .
>
> . . .
>
> . . . Cinda's basic reading and spelling skills appear to be adequate for a variety of demands, as do her basic math skills; although once again at this time she is so significantly compromised in working recall that I suspect that currently she will likely to require a predictable work routine and job training that is largely demonstration oriented and practice based. In addition, at least for the foreseeable future, even with such a situation it is my expectation that she will not probably be able to attain a competitive rate of work and quality of performance over a full-time work day. In addition, as she is currently functioning, I would expect her to require significant emotional support throughout that process. . . .

AR at 369, 371.

Dr. Bartlett diagnosed plaintiff with major depression, recurrent, considered severe without psychotic features, PTSD, reported to be largely resolved and mixed receptive-expressive language disorder, and assigned a Global Assessment of Functioning ("GAF"[3]) score of 50.

---

[3] The GAF score is a subjective determination based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning." AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000). A GAF score falls within a particular 10-point range if either the symptom severity or the level of functioning falls within the range. *Id.* at 32. For example, a GAF score of 51-60 indicates "moderate symptoms," such as a flat affect or occasional panic attacks, or "moderate difficulty in social or occupational functioning." *Id.* at 34. A GAF score of 41-50 indicates "[s]erious symptoms," such as suicidal ideation or severe obsessional rituals, or "any serious impairment in social, occupational, or school functioning," such as the lack of friends and/or the inability to keep a job. *Id.* A GAF score of 31-40 indicates "some impairment in reality testing and

REPORT AND RECOMMENDATION - 10

1   In addition, as noted above, Dr. Bartlett also filled out some interrogatories nearly 2

2   years later, indicating plaintiff had marked restrictions in several areas regarding Affective

3   Disorders under 12.04, as well as personality disorders under12.08.  AR at 402-06.

4   The ALJ gave no weight to Dr. Bartlett's answers to the interrogatories.  The ALJ

5   noted that Dr. Bartlett indicated that claimant had "repeated" episodes of decompensation of

6   extended duration.  AR at 21.  Actually, this is in error.  Jenny Walter, PA-C so indicated (AR

7   at 397), but Dr. Bartlett did not.  AR at 406.  In addition, the ALJ notes that the questionnaire

8   answers were inconsistent with the evaluation that he conducted earlier, with no explanation.

9   AR at 21.  The ALJ then stated that because Dr. Bartlett used words such as "suspect" and

10  "probably" in his opinion that the doctor was somehow equivocal and perhaps did not

11  understand social security determinations.  *Id.*

12  The ALJ erred in part, as discussed above, regarding Dr. Bartlett's answers to the

13  interrogatories.  If this were the only error, then perhaps it would not require remand.

14  However, because the ALJ relied upon the inadequacies of the interrogatory answer as a base,

15  he failed to deal with the opinion after the consultation in January 2010.  In other words, the

16  ALJ used the perceived inadequacies of the interrogatory answers to minimize the significance

17  of the original evaluation.  The ALJ did not provide specific and legitimate reasons supported

18  by the record for his rejection of the January 2010 evaluation.  Indeed, apart from the allegedly

19  equivocal language (unsurprising in light of the science involved), the ALJ only offers that Dr.

20  Bartlett may not be familiar enough with Social Security regulations based on a misreading of

21

22  communication" or "major impairment in several areas, such as work or school, family
    relations, judgment, thinking or mood."  A GAF score of 21-30 indicates "behavior is
23  considerably influenced by delusions or hallucinations" or "serious impairment in
    communications or judgment" or "inability to function in all areas."  *Id.*

24

REPORT AND RECOMMENDATION - 11

whether he indicated there were repeated episodes of decompensation.  The issue of the repeated episodes of decompensation has been addressed.  There is no reason to believe that Dr. Bartlett is unfamiliar with social security regulations or listings.

Because the ALJ failed to discuss or properly evaluate the January 2010 opinion of Dr. Bartlett, this case must be remanded for further proceedings.  At that time, the ALJ can also consider whether there is evidence of personality disorder as indicated by Dr. Bartlett in the questionnaire.

          b.        Anselm A. Parlatore, M.D.

About a month after being evaluated by Dr. Bartlett, plaintiff was also evaluated by Dr. Parlatore.  AR at 241-45.  Dr. Parlatore described her as very "subdued and gloomy and morose.  She was tearful and as a matter of fact she cried during the entire interview with tears running down her face."  AR at 243.  Her mood was depressed, her affect constricted, and she answered in monotones.  During her cognitive test, her crying and tearfulness interfered with her concentration, focus and attention.  She could remember only 2 of 4 objects, and made mistakes during the serial 7 exam.  He diagnosed her with recurrent major depression, PTSD and a GAF score of 48.  AR at 243.  He noted that plaintiff had "significantly sever[sic] Depression and PTSD symptoms.  She was not able to stop crying and that's what she experience[d] in having to give up work."  AR at 244.

As with Dr. Bartlett, Dr. Parlatore was given an interrogatory form to answer.  AR at 390-93.  This was submitted nearly a year and a half after Dr. Parlatore last saw plaintiff, and is simply a check-the-box type of form.  The ALJ gave no weight to the interrogatory.  As noted by the ALJ:

> These were prepared about a year and a half after Dr. Parlatore's one-time consultative examination.  Dr. Parlatore is not a treating medical source nor did the claimant consult him for follow up.  There is no indication that Dr. Parlatore

>reviewed medical records dated subsequent to his only examination of the claimant.

AR at 22. For all the reasons stated, the ALJ did not err in applying no weight to the interrogatories. They are mere check the box forms with no analysis. However, the ALJ did err by failing to fully analyze Dr. Parlatore's earlier opinion. Again, the ALJ appears to have used the lack of validity of the interrogatory answers to discount the information and opinions rendered by Dr. Parlatore after he examined plaintiff. As to that opinion, the ALJ gave "limited weight" to Dr. Parlatore's opinion. However, the ALJ apart from stating that "limited" weight was given, the ALJ did not state what was credited and what was not. It is not clear, for example, if he credited or did not credit the findings regarding her concentration, focus and attention. Accordingly, it is not possible to determine if the RFC that was determined takes that into account. In addition, it is not clear what weight he assigned to the GAF score of 48, remarkably close to the GAF score of 50 assessed by Dr. Bartlett less than a month before. All of this requires a remand.

    B.    <u>Remaining Issues</u>

Because the ALJ erred regarding the treatment of the examining physicians' opinions, this case must be remanded. This error necessarily impacts the remaining assignments of error. The ALJ should reevaluate *all* medical evidence, consistent with the hierarchy of medical evidence as set forth in *Orn*, described above. As part of that process, the ALJ should revaluate if personality disorder is a severe impairment, if the impairments constitute a listing, reevaluate plaintiff's credibility and RFC, and determine if there are any jobs she can perform in the national economy.

REPORT AND RECOMMENDATION - 13

VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions.  A proposed order accompanies this Report and Recommendation.

DATED this 11th day of January, 2013.

_____
JAMES P. DONOHUE
United States Magistrate Judge